```
UNITED STATES DISTRICT COURT                     USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                    DOCUMENT
------------------------------------------------------------X ELECTRONICALLY FILED
CARDEL O'BRIAN BIRCH,                         :  DOC #: _____
                                              :  DATE FILED: February 7, 2018
                          Petitioner,         :
                                              :
        -v-                                   :
                                              :  17-cv-6769 (KBF)
THOMAS DECKER, New York Field Office          :
Director, Immigration and Customs             :  OPINION & ORDER
Enforcement, DIANE MCCONNELL, Assistant       :
Field Office Director, Immigration and Customs:
Enforcement, ELAINE C. DUKE, Acting           :
Secretary, Department of Homeland Security,   :
and JEFFERSON B. SESSIONS, United States      :
Attorney General,                             :
                                              :
                          Respondents.        :
------------------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

Neither the statutory scheme governing this immigration proceeding nor the Constitution permit what amounts to indefinite and potentially permanent detention of a person on U.S. soil without a bond hearing. Though it is true that no alien has a constitutional right to enter this country, it should also be obvious that the United States Government, whether ostensibly effecting removal or considering an application for asylum, cannot permanently detain anyone without justification. When someone is in a detention facility in our country—whether technically "admitted" or not—we have certain responsibilities. Such persons may have diminished constitutional rights, but even the most basic notions of fairness, justice, and liberty require a bond hearing after a prolonged period of detention. Eleven months of detention, as has occurred here without a bond hearing, is too long.

This case concerns whether an individual, Cardel O'Brian Birch ("Birch" or "petitioner"), who has been detained by Immigration and Customs Enforcement ("ICE") in New York for over eleven months, is entitled to a bond hearing. He is. This case is not about whether the outcome of that hearing should result in his release into our community—that is a question for others to decide. The question here is more basic and more fundamental: whether due process requires that a bond hearing concerning that question even occur.

The petitioner herein is not the poster child for release. He has a significant criminal history based on his attempt to smuggle more than a kilogram of narcotics across the border. For that crime, he was prosecuted and has now fully served the penal sentence. Upon institution of removal proceedings, however, petitioner was determined to have a "credible fear of persecution," thereby entitling him to an asylum hearing. The irony is that petitioner's potential eligibility for asylum has placed him in administrative limbo: he cannot be admitted to the country, but ICE acknowledges that there may well be a reason he should not be sent out. And so, he remains in detention.

It may be that ICE will ultimately decide that petitioner is not entitled to asylum. And it may be that whatever judge hears petitioner's bond application determines that he should remain in detention pending resolution of his asylum status. Such decisions are plainly within a range of reasonable outcomes. But it is not reasonable, and indeed not constitutional, that the Government detain

petitioner on U.S. soil, in a U.S. detention facility, for eleven months without a bond hearing and without any end in sight.

Before the Court is petitioner's only chance to be heard outside of the ICE administrative process: a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (See Pet. for Writ of Habeas Corpus ("Pet."), ECF No. 1.) His petition asserts, in sum, that his continued detention without a bond hearing is unlawful on both statutory and constitutional grounds. The Court agrees.

Accordingly, the petition is GRANTED and respondents are directed to provide petitioner with a constitutionally adequate bond hearing within 21 days from the date of this order.

I.  FACTUAL BACKGROUND[1]

    A.  <u>Arrival in the United States and Criminal Proceedings</u>

Petitioner is a thirty-seven year old Jamaican citizen. On April 14, 2016, he arrived at John F. Kennedy International Airport ("JFK") in New York and presented a valid Jamaican passport and B2 visitor visa to an immigration officer, who stamped his passport and allowed him to proceed past the initial checkpoint. After his passport was stamped but before he was allowed to exit customs, petitioner was selected for secondary inspection by an officer from U.S. Customs and Border Protection ("CBP").

---

[1] The relevant facts are undisputed. The Court's recitation of facts is derived from Birch's petition and associated exhibits (ECF No. 1), respondents' memorandum of law in opposition to the petition (ECF No. 13), and certain documents attached to respondent's return (ECF No. 12).

3

During secondary inspection, the CPB officer discovered 1.4052 kilograms of cocaine hidden in a false bottom of petitioner's carry-on bag. As a result, petitioner was arrested and temporarily "paroled" into the United States for the purpose of criminal prosecution under 8 U.S.C. § 1182(d)(5)(A). He was subsequently indicted on two felony drug counts in the United States District Court for the Eastern District of New York, and pled guilty to importation of cocaine on October 19, 2016. Subject to that plea, petitioner was sentenced to time served (at that point, approximately ten months) on February 23, 2017.

B. <u>Request for Asylum and Immigration Detention</u>

On February 24, 2017, petitioner was remanded to the custody of CBP and was interviewed at JFK as part of his removal proceedings. During that interview, petitioner expressed a fear of returning to Jamaica and was referred for a formal "credible fear" interview by an asylum officer pursuant to 8 U.S.C. § 1225(b)(1)(A)(ii). Petitioner was then transferred to the custody of ICE at Hudson County Correctional Facility in Kearny, New Jersey.

On February 28, 2017, petitioner underwent a "credible fear" interview with an asylum officer pursuant to 8 U.S.C. § 1225(b)(1)(B). The officer determined that petitioner did in fact have a credible fear of persecution, and referred his case to the Immigration Court for a hearing and determination on the merits. ICE subsequently served petitioner with a Notice to Appear ("NTA") on March 13, 2017. The NTA charged that petitioner was an "arriving alien" subject to removal under

Sections 212(a)(2)(A)(i)(II) and 212(a)(2)(C) of the Immigration and Nationality Act ("INA"), and that the date and time of his hearing was "TBD".

Petitioner submitted a formal Application for Asylum and for Withholding of Removal (commonly known as "Form I-589") on June 14, 2017. That same day, petitioner also filed a motion to terminate his removal proceedings based on the argument that he was actually "admitted" to the United States on April 14, 2016, and therefore was not an "arriving alien" as charged. The Immigration Judge ("IJ") denied petitioner's motion to terminate via summary oral decision on August 2, 2017. To date, there has been no determination on the merits of petitioner's asylum application, and he remains in immigration detention.[2]

II. LEGAL PRINCIPLES

    A.    <u>Statutory Text</u>

The Immigration Nationality Act ("INA"), 8 U.S.C. § 1101 <u>et seq.</u>, governs the detention and removability of, <u>inter alia</u>, aliens seeking admission to the United States. As this Court concludes that petitioner has never been formally "admitted" into the U.S., the relevant statutory provision here is § 1225. Section 1225(b)(2)(A) provides that an alien seeking admission who is not "clearly and beyond a doubt entitled to be admitted . . . shall be detained for [removal proceedings]." No time limit on detention is provided; nor are there any statutory timeframes governing the administrative process. Instead, one way of reading the statute is that it provides

---

[2] Petitioner asserts that he was scheduled for merits hearings before the IJ on November 17, 2017, January 11, 2018, and January 29, 2018, but that in each instance the IJ was unable to fully hear his case. (ECF Nos. 17, 18.) Petitioner's next scheduled appearance before the IJ is March 20, 2018. (ECF No. 18.)

5

for indefinite detention—and that this detention may be permanent—without an opportunity for a bond hearing.³ Of course, and as explained below, such a reading would be constitutionally infirm. The statute should and must provide for a reasonable period of detention until such time as the administrative removal process has been completed. But a determination of "reasonableness" requires a bond hearing. See Zadvydas v. Davis, 533 U.S. 678, 682 (2001); Rodriguez v. Robbins, 715 F.3d 1127, 1144 (9th Cir. 2013) cert. granted sub nom. Jennings v. Rodriguez, No. 14-1204, 2016 WL 1182403 (U.S. June 20, 2016)⁴; Lora v. Shanahan, 804 F.3d 601, 616 (2d Cir. 2015).

As mentioned above, petitioner here has requested asylum. Section 1225(b)(1)(B)(ii) sets forth procedures for asylum applicants. It too provides that an individual seeking such status "shall be detained for further consideration of the application for asylum." Here again, the statute provides no timeframe for completion of the administrative process or for a bond hearing during the pendency of such process. And again, one reading of the statute is that indefinite detention without a bond hearing is allowed, however long it may be. But that reading would be unconstitutional. To render it constitutional, it is appropriate to read in a requirement for only a reasonable period of detention; a reasonableness

---

³ Although the statute does not provide any explicit right to a bond hearing, the Attorney General is vested with discretionary authority to "parole" arriving aliens under specified circumstances. See 8 U.S.C. § 1182(d)(5)(A). This provision does provide one avenue for discretionary release from immigration detention, but it plainly does not substitute for an individualized right to a bond hearing before an immigration judge. See Rodriguez v. Robbins, 715 F.3d 1127, 1144 (9th Cir. 2013) ("[T]he discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention.").

⁴ The Ninth Circuit's decision in Rodriguez is currently sub judice before the Supreme Court. Oral argument was held on November 30, 2016, and reargument was held on October 3, 2017.

6

determination would require a bond hearing.  See Zadvydas, 33 U.S. at 682; Rodriguez, 715 F.3d at 1144; Lora, 804 F.3d at 616.

B.  Constitutional Principles

It is undisputed that "Congress has the authority to detain aliens suspected of entering the country illegally pending their deportation hearings." Reno v. Flores, 507 U.S. 292, 305-306 (1993) (citations omitted); see also Demore v. Kim, 538 U.S. 510, 526 (2003) ("[T]he Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." (emphasis added)).  Further, it is well established that aliens have diminished constitutional rights, and that "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable to citizens." Mathews v. Diaz, 426 U.S. 67, 79-80 (1976); see also Demore, 538 U.S. at 521 (same).  That is particularly true as applied to aliens who are seeking admission in the first instance, as opposed to those who have already entered the United States (legally or illegally). See Zadvydas, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.") (collecting cases); see also Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953) ("Mezei") (holding that "an alien on the threshold of initial entry stands on a different footing" from one who has "passed through our gates").

However, the Court is not aware of a single case which holds that an arriving alien detained for removal proceedings in a U.S. detention facility on the mainland

7

has no due process rights under the constitution. And indeed, there are numerous Supreme Court decisions that outline the nature and scope of constitutional rights—including due process rights under the Fifth Amendment—that apply to all persons within the territorial jurisdiction of the United States, without regard to legal status. See, e.g., Wong Wing v. United States, 163 U.S. 228, 238 (1896) ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection guarantied [sic] by [the fifth and sixth amendments]."); Yick Wo v. Hopkins, 118 U.S. 356, 369 (1886) ("The fourteenth amendment to the constitution is not confined to the protection of citizens.") As such, the relevant question here is not whether arriving aliens who have been detained in the U.S. are entitled to Due Process Clause protection, but rather the nature and scope of that protection as applied to the facts here.

An argument could be made—though even the Government has not made it here[5]—that a non-admitted alien detained in the U.S. nonetheless stands in the same constitutional position as aliens deemed "extraterritorial" (for instance, those who are literally turned away at the border or detained in a foreign country). See, e.g., Johnson v. Eisentrager, 339 U.S. 763, 785 (1950) (holding that German nationals confined by the U.S. Army in Germany had no right to writ of habeas corpus); cf. United States v. Verdugo-Urquidez, 494 U.S. 259, 260 (1990) (holding that Fourth Amendment did not apply to search of the Mexican residence of a

---

[5] The Government appears to concede that petitioner is entitled to some constitutional protection, and that this Court could grant some form of relief. (See Resp'ts' Mem. of Law in Opp'n to Pet. ("Resp'ts' Mem.") at 14, ECF No. 13 (referencing the "fewer constitutional protections enjoyed by aliens seeking admission into the United States" (emphasis added)).)

8

Mexican citizen with no voluntary attachment to the United States). It is fairly well established that such "extraterritorial" aliens are entitled to virtually no constitutional rights.

Here, however, it is undisputed that petitioner has been detained on U.S. soil for almost two years. To assert that he lacks legal status as an "admitted" alien for purposes of the INA (or any other statute) is one thing,[6] but to assert that he is not "in" the U.S., and therefore not entitled even to <u>diminished</u> Due Process protection, offends basic notions of fairness, justice, and liberty.[7] Indeed, it would privilege form over the most important substance. As the Supreme Court has repeatedly affirmed, "[d]ue process of law is a summarized constitutional guarantee of respect for those personal immunities which . . . are so rooted in the traditions and conscience of our people as to be ranked as fundamental . . . or are implicit in the concept of ordered liberty." <u>Rochin v. California</u>, 342 U.S. 165, 169 (1952) (internal quotations omitted). And "[f]reedom from imprisonment—from government custody, detention, or other forms of restraint—lies at the heart of the liberty that [the Due Process] Clause protects." <u>Zadvydas</u>, 533 U.S. at 682; <u>see also</u> <u>Kansas v.</u>

---

[6] There are multiple cases holding that "detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States." <u>See, e.g.</u>, <u>Leng May Ma v. Barber</u>, 357 U.S. 185, 188 (1958). But those cases are not directly applicable where, as here, a non-admitted petitioner's <u>constitutional</u> (as opposed to statutory) rights are at stake.

[7] This Court does not read the Supreme Court's discussion of <u>Mezei</u> in <u>Zadvydas</u>, 533 U.S. at 693-94, as affirmatively suggesting that non-admitted aliens detained in the U.S. are entitled to <u>zero</u> constitutional protections. Indeed, the Supreme Court specifically noted the territorial nature of this issue, stating "[i]t is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens <u>outside of our geographic borders</u>." <u>Zadvydas</u>, 533 U.S. at 693 (citing <u>Verdugo-Urquidez</u>, 494 U.S. at 269 and <u>Eisentrager</u>, 339 U.S. at 784, both of which involved extraterritorial application of constitutional rights). Further, even the dissent in that case acknowledged that "persons within our jurisdiction . . . are entitled to the protection of the Due Process Clause." <u>Id.</u> at 718 (Kennedy, J., dissenting).

Hendricks, 521 U.S. 346, 356 (1997) ("[F]reedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'") (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

In Zadvydas, the Supreme Court noted that although Congress has broad authority to create immigration law, "that power is subject to important constitutional limitations." 533 U.S. at 695 (citing INS v. Chadha, 462 U.S. 919, 941-42 (1983) (holding that Congress must choose "a constitutionally permissible means of implementing" that power)). There, the Supreme Court explicitly stated that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," and held that there was an implicit six-month limit to the reasonable duration of post-removal-period detention under 8 U.S.C. § 1231(a)(6). Id. at 690.

Similarly, in Rodriguez, 715 F.3d at 1144, the Ninth Circuit rejected an interpretation of 8 U.S.C. § 1225(b) that would allow for indefinite mandatory detention, and held that § 1225(b) detainees are entitled to a bond hearing under 8 U.S.C. § 1226(a) after six months.[8] And in Lora, 804 F.3d at 616, the Second Circuit held that, in order to avoid the constitutional concerns raised by the potential of indefinite detention under 8 U.S.C. § 1226(c) (which states that the "Attorney General shall take into custody" certain criminal aliens (emphasis added)), "an immigrant detained pursuant to section 1226(c) must be afforded a bail hearing before an immigration judge within six months of his or her detention."

---

[8] The Ninth Circuit further held that aliens detained pursuant to 8 U.S.C. § 1226(c) are entitled to a bond hearing after six months. Rodriguez, 715 F.3d at 1139.

10

III.  DISCUSSION

Petitioner argues: (1) that he was "admitted" to the United States; (2) that he is subject to detention under 8 U.S.C. § 1226(a) rather than § 1225(b); and (3) that to the extent § 1225(b) allows for indefinite, unchecked detention of arriving aliens seeking asylum, it violates due process. (<u>See</u> Pet. ¶¶ 1-49 at 11-30). The first two of petitioner's arguments are readily dismissed. However, for the reasons stated below, the Court agrees that respondents' interpretation of § 1225(b) raises serious constitutional concerns, and therefore should be rejected.

A.  <u>Petitioner Was Never "Admitted" to the United States</u>

First, petitioner argues that he was legally "admitted" to the United States when an immigration official stamped his passport on April 14, 2016, and therefore is not properly classified as an "arriving alien" subject to detention under 8 U.S.C. § 1225(b). (<u>See</u> Pet. ¶¶ 1-4 at 11-12.) But the law is clear that an alien is not "admitted" until he or she makes an "entry . . . into the United States," 8 U.S.C. § 1101(a)(13)(A), and "entry" has three requirements: (1) "a crossing into the territorial limits of the United States, i.e., physical presence"; (2) "an inspection and admission by an immigration officer or . . . actual and intentional evasion of inspection"; and (3) "freedom from official restraint." <u>Correa v. Thornburgh</u>, 901 F.2d 1166, 1171 (2d Cir. 1990) (citations omitted). Although petitioner was allowed to proceed past the initial checkpoint at JFK, he was immediately thereafter selected for secondary inspection by CBP and was never "free to physically enter the

United States." Id. at 1172. Accordingly, petitioner was never "admitted" and is properly considered an "arriving alien" under the INA.

B.  Petitioner is Detained Under 8 U.S.C. 1225(b)

Second, petitioner argues that, because he has been determined to have a credible fear of persecution, he is currently detained pursuant to 8 U.S.C. § 1226(a), not § 1225(b). (See Pet. ¶¶ 21-32 at 18-23.) But petitioner provides absolutely no legal support for his argument that an "arriving alien" who is determined to have a credible fear of persecution under § 1225(b)(1)(B)(ii) is thereby immediately subject to § 1226(a), which broadly governs the arrest and detention of aliens pending a final removal decision. It is clear that § 1225(b)(1)(B)(ii) provides the legal basis for petitioner's detention irrespective of any arguments he may have as to the permissible nature or length of such detention.

C.  Due Process

In essence, petitioner argues that indefinite detention without a bond hearing violates his due process rights, and therefore § 1225(b)(1)(B)(ii) should be read to include an implicit time limitation on mandatory detention to avoid the constitutional issue, at which point he is entitled to a bail hearing. (See Pet. ¶¶ 33-43 at 23-28). The Court agrees.[9]

As a threshold matter, it is clear that aliens detained on U.S. soil, regardless of whether they have been formally "admitted" under § 1101(a)(13)(A), are entitled

---

[9] The Court's holding is limited to the facts of this case, which involve an arriving alien who has been detained under § 1225. Further, as described infra, the Court does not hold that six months is necessarily the precise moment at which mandatory detention authority expires under § 1225(b), but rather than eleven months is too long.

12

to some due process protection. That protection is undoubtedly diminished—both vis-à-vis citizens and immigrants who have effected an entry (legally or illegally)—but it nonetheless exists in some form. If that were not true, the Government could permanently detain arriving aliens at detention facilities on the mainland under the fiction that such persons were not "in" the United States, no matter how long, arbitrary, or capricious such detention. What's more, that wide-sweeping authority would not be grounded in the Constitution itself (which broadly provides that "no person shall . . . be deprived of life, liberty, or property, without due process of law"), but rather the INA's administrative definition of "admission."

The question then, is exactly what process is due to an alien who is detained subject to § 1225(b)(1)(B)(ii). Although the Supreme Court's decision in Zadvydas and the Second Circuit's decision in Lora are not directly applicable here, the underlying principles are nonetheless relevant. Regardless of whether an alien is detained beyond the statutory post-removal period (§ 1231(a)(6) – Zadvydas), by virtue of their criminal inadmissibility (§ 1226(c) – Lora), or because of a pending asylum application (§ 1225(b)(1)(B)(ii)), the reality is that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Zadvydas, 533 U.S. at 690. And "when an Act of Congress raises a serious doubt as to its constitutionality," courts are directed to "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Id. at 689 (internal quotations and citations omitted).

That is exactly the result reached by the Ninth Circuit in Rodriguez, 715 F.3d at 1144. Faced with the reality that § 1225(b) could be interpreted to allow for indefinite mandatory detention of arriving aliens seeking asylum, the Ninth Circuit held that "to the extent detention under § 1225(b) is mandatory, it is implicitly time-limited." Id. The Ninth Circuit further held that although the "Government's detention authority does not completely dissipate at six months . . . the mandatory provisions of § 1225(b) . . . expire at six months," at which point the government's detention authority is discretionary, and a bond hearing is required under § 1226(a). Id. This Court agrees with the Ninth Circuit's reasoning, and reaches substantially the same result here.

Petitioner has been detained for more than eleven months without any bond hearing, or any proffer by the Government that such detention is necessary to protect the public or to prevent flight. Given that petitioner has never been formally "admitted" to the United States, it may be the case that six months is not the precise moment at which the Government's mandatory detention authority under § 1225(b) expires. But the Court need not resolve where the line is drawn today apart from stating that eleven months of detention without a bond hearing is too long. Accordingly, the Government's mandatory detention authority under § 1225(b) has expired, and petitioner is entitled to a bond hearing.[10]

---

[10] The INA's implementing regulations state that an IJ "may not redetermine conditions of custody" for "[a]rriving aliens in removal proceedings," including those with outstanding asylum applications. 8 C.F.R. § 1003.19(h)(2)(i)(B). To the extent such regulations might otherwise preclude an immigration judge from presiding over the bond hearing that the Court has ordered here, the Court similarly concludes that the regulations should be read to include an implicit time limit in accordance with due process.

14

To the extent that § 1225(b) could not be fairly read to include an implicit time limit on mandatory detention, the Court would alternatively have to conclude that it is unconstitutional. Congress' authority to make immigration law, though broad, is not completely unrestricted. <u>Zadvydas</u>, 533 U.S. at 695 (citing <u>Chadha</u>, 462 U.S. at 941-42). Indefinite, mandatory detention of <u>any</u> person on U.S. soil, regardless of immigration status, offends basic notions of fairness, justice, and liberty protected by the Fifth Amendment. And since the parole authority contained in § 1182(d)(5)(A) is entirely discretionary, it provides no actual due process protection for persons facing indefinite detention under § 1225(b). <u>Rodriguez</u>, 715 F.3d at 1144.

To be clear, the Court's holding is <u>not</u> that petitioner must be released from immigration detention. As previously noted, petitioner has a serious criminal history, and there may be perfectly reasonably justification for continued detention. But due process compels that a bond hearing take place after a period of prolonged detention. Petitioner has that right, and the Court directs that he be afforded a constitutionally adequate bond hearing within 21 days.

IV.     CONCLUSION

The petition for writ of habeas corpus at ECF No. 1 is hereby GRANTED. Respondents are directed to provide petitioner with a constitutionally adequate bond hearing within 21 days from the date of this Opinion & Order.

SO ORDERED.

Dated:      New York, New York
            February 7, 2018

_____
KATHERINE B. FORREST
United States District Judge